UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDREW GAYOT,

        Plaintiff,

       v.

C.O. NICHOLAS SUED, *et al.*,

        Defendants.

_____

**DECISION AND ORDER**

6:21-CV-06689 EAW

### INTRODUCTION

*Pro se* plaintiff Andrew Gayot ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Five Points Correctional Facility ("Five Points") and Attica Correctional Facility ("Attica"). (Dkt. 1). Pending before the Court is a motion for summary judgment for failure to exhaust administrative remedies filed by defendants C.O. Nicholas Sued ("Sued"), C.O. Matthew Petrosino ("Petrosino"), C.O. Jonathan Raymond ("Raymond"), and Sgt. Patrick Riley ("Riley") (collectively, "Defendants"). (Dkt. 29).

For the following reasons, Defendants' motion for summary judgment is denied.

## BACKGROUND

I.    **Plaintiff's Allegations**

Plaintiff's complaint (Dkt. 1)[1] sets forth the following allegations concerning his prior confinement at Five Points and Attica.  On November 8, 2019, while housed at Attica, Plaintiff was summoned to attend an appointment.  (*Id.* at 8).  Plaintiff was refused use of the restroom during the drive to the appointment, was not allowed to loosen his handcuffs, and never saw a doctor or medical staff.  (*Id.* at 8-10).  When entering the van to return to Attica, Plaintiff's pants were falling off and he was sexually assaulted.  (*Id.* at 10).  Officers then made racist jokes and asked "[w]hat makes you black guys think you're so tough anyways?"  (*Id.*).  Upon arrival at Attica, Plaintiff was taken to the Special Housing Unit ("SHU") because officers claimed he made threats.  (*Id.* at 11).

On November 12, 2019, Plaintiff was issued a Misbehavior Report.  (*Id.*).  Plaintiff then filed a complaint with the Incarcerated Grievance Resolution Committee ("IGRC") and wrote to the superintendent.  (*Id.* at 11-12).  Plaintiff's claims were "determined to be 'unsubstantiated.'"  (*Id.* at 12).

---

[1]    Because Plaintiff's complaint is verified (*see* Dkt. 1 at 20), the Court may rely on it for factual details.  "A plaintiff's verified complaint is to be treated as an affidavit." *Zielinksi v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), 2020 WL 7074845, at *7 (N.D.N.Y. Nov. 12, 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist. . . .")); *see also Brandon v. Kinter*, 938 F.3d 21, 27 n.5 (2d Cir. 2019) ("Brandon's Amended Complaint was sworn under penalty of perjury. Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes.").

Several months later, on or about March 5, 2020, Plaintiff was transferred to Five Points. (*Id.* at 13). Within days of the transfer, on March 12, 2021, an officer threatened Plaintiff by stating that he would have smashed his head into the ground eight years ago. (*Id.*). Plaintiff was then issued a Misbehavior Report for making threats. (*Id.*). A few days later, the charges against Plaintiff were dismissed. (*Id.*).

Fast forward to July 28, 2021—Plaintiff alerted an officer to a medical emergency. (*Id.* at 14). Riley came to Plaintiff's cell with a mental health counselor. (*Id.*). Plaintiff told the mental health counselor that he was not having a mental health crisis. (*Id.*). Riley returned and informed Plaintiff he was going to be taken to "one-on-one self harm watch." (*Id.*). Plaintiff reiterated to Riley that he was not suicidal. (*Id.*).

Riley then organized a cell extraction. (*Id.*). "During the extraction, several officers entered [Plaintiff's] cell and assaulted [him] for several minutes." (*Id.*). Plaintiff did not resist and was then dragged out of his cell in handcuffs while bleeding. (*Id.*). Plaintiff was transported to the infirmary. (*Id.*).

Upon arrival at the infirmary, Riley entered Plaintiff's room and stated "I'm gonna [sic] give you what you want!" (*Id.* at 15). Petrosino, Sued, and Raymond then entered the room. (*Id.*). Sued punched Plaintiff on the right side of his face, causing Plaintiff to fall to the floor. (*Id.*). "[T]hey all began to punch and kick me all over my body for at least 30[ ]seconds." (*Id.*). They stopped after Riley ordered "that's enough." (*Id.*). Plaintiff was then picked up off the floor and placed on a gurney. (*Id.*). Riley "congratulated" Sued for throwing "such a good punch." (*Id.* at 16). "[U]se of force" photos were not taken until August 5, 2021, and Plaintiff was denied medical assistance. (*Id.* at 16-17).

II.      **Plaintiff's Claims That Survived Screening**

The Court screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)

and 1915A and held that the following claims were sufficient to survive initial review and

proceed to service: excessive force and failure to protect[2] claims regarding the incident at

Five Points in the emergency room on July 28, 2021, against Riley, Petrosino, Sued, and

Raymond.  (Dkt. 5 at 25-26).

III.     **Defendants' Pending Motion for Summary Judgment**

Defendants filed the instant motion for summary judgment on November 6, 2024.

(Dkt. 29).  In their filing, Defendants attach various exhibits that they rely upon in support

of summary judgment, including Plaintiff's deposition and a list of Plaintiff's grievances.

(Dkt. 29-6; Dkt. 29-8).  Defendants also submitted a declaration from John Marsella,

Assistant Attorney General, stating that a copy of a certification to records submitted in

support of summary judgment is attached.  (Dkt. 29-5 at ¶ 4).

Two certifications are attached as exhibits.  (Dkt. 29-7 at 1-2).  A certification from

"Carol Ann Murphy" states that "I am employed by the Department of Correctional

---

2       Plaintiff's failure to protect claims appear to be claims for failure to intervene.  A
claim for failure to protect arises when an inmate is incarcerated under conditions posing
a substantial risk of serious harm and prison officials exhibit deliberate indifference to that
risk.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Such a claim often arises when prison
officials fail to protect prisoners from violence at the hands of other prisoners.  *Id.*  On the
other hand, a claim for failure to intervene arises when a prison official fails to "intervene
in a situation where another official is violating an inmate's constitutional rights, including
the use of excessive force, in [his or her] presence."  *Samuels v. Fischer*, 168 F. Supp. 3d
625, 646 (S.D.N.Y. 2016).  Based on the facts in the complaint, Plaintiff appears to be
asserting claims for failure to intervene because he alleges Defendants failed to stop the
use of excessive force that occurred at the hands of other officers.

Services as an IRC I at Green Haven Correctional Facility, and I have compared the

annexed photocopies of fpms screen Disciplinary packet, grievances with the originals kept

on file at Green Haven Correctional Facility for: [Plaintiff] . . . and have found that said

photocopies are true and completes copies thereof." (*Id.* at 1). A certification from "Kelly

Ripa" identified as filling the "position of IRC II" states that pursuant to Federal Rule of

Evidence 902, the "attached documents . . . are the complete, true and exact copy of the;

crime and sentence printout with classification analysis; disciplinary history printout,

Inmate locator history printout; Program history, classification print out (s) dated August

3, 2023; Unusual Incident Report dated 7/28/21." (*Id.* at 2). She also states as follows:

> 16A3173 GAYOT, ANDY The attached records are maintained in the regular
> course of business of D.O.C.C.S. and, with regard to the attached records that
> were created by employees of D.O.C.C.S., I certify that those records were
> made in the regular course of business of D.O.C.C.S., that it was in the
> regular course of business of D.O.C.C.S. to make them at the time of the
> condition, act, transaction, occurrence or event documented in such records,
> or within a reasonable time thereafter, and that the employees who created
> the records had a duty to truthfully record such condition, act, transaction,
> occurrence, or event. However, as to records which were not created
> specifically by employees of the D.O.C.C.S., and which were received from
> other agencies, departments, businesses, or individuals, I certify only that the
> record is a true and accurate copy of the record contained or maintained here
> at Five Points Correctional Facility, for the case on Incarcerated Individual
> 16A3173 GAYOT, ANDY.

(*Id.*). No documents are attached to the certifications.

Plaintiff did not respond to the motion for summary judgment. On December 26,

2024, Defendants filed a reply, alleging that Plaintiff failed to establish any dispute as to

the material facts. (Dkt. 31 at 2-3).

## DISCUSSION

### I.    Legal Standards

#### A.    Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific

evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## B.    Section 1983 Claims

"To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants . . . acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges." *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 342 (N.D.N.Y. 2001); *see Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must show the "personal involvement of defendants in alleged constitutional deprivations." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The theory of respondeat superior is unavailable in a § 1983 action. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "Instead, a plaintiff must . . . prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

## II.    Evidence Before the Court

Defendants do not present any admissible evidence outside of Plaintiff's deposition.

Assistant Attorney General Marsella, as counsel to Defendants, lacks personal knowledge

regarding the underlying facts and does not claim otherwise.  Thus, his declaration cannot

be relied on for admissible evidence.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or

declaration used to support or oppose a motion must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated."); *see Wyler v. United States*, 725 F.2d 156, 160

(2d Cir. 1983) (attorney affidavit "which does not contain specific facts or is not based on

first-hand knowledge is not entitled to any weight" when considering summary judgment

motion).

Additionally, the certification from the Five Points purported record custodian

(Kelly Ripa) is not adequate to establish the authenticity and admissibility of the grievance

records.[3]  First, contrary to the requirements of Federal Rules of Evidence 803(6) and

902(11), there is nothing in the record before the Court establishing that Ms. Ripa is a

qualified witness to authenticate the various records.  *See In re Lyman Good Dietary*

*Supplements Litig.*, No. 17-CV-8047 (VEC), 2020 WL 3414927, at *5 (S.D.N.Y. June 22,

---

[3]    Confusingly, Defendants also attach a certification from a purported records custodian at Green Haven Correctional Facility.  (Dkt. 29-7 at 1).  It is not clear why Defendants are relying on records purportedly maintained by that facility.  The incident did not take place at that facility, and while Plaintiff at one point during the course of this litigation resided at that facility (Dkt. 7), he does not currently reside there nor did he at the time the summary judgment motion was filed (*see* Dkt. 26).  In any event, the Green Haven certification suffers from the same deficiencies as the certification from Five Points.

2020) (certification "must be executed by a person who 'would be qualified to testify as a custodian or other foundation witness'" and "the witness must have 'enough familiarity with the record-keeping system of the entity in question to explain how the record came into existence in the course of a regularly conducted activity of the entity'") (citations omitted); *see also United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].") (internal quotations and citation omitted).  The certification identifies Ms. Ripa as filling the position of "IRC II", but there is no explanation as to the meaning of that position, or linking that position to somebody qualified to lay the foundation for the admissibility of the records at issue.

Second, Ms. Ripa's certification appears to reference records that have nothing to do with Defendants' motion for summary judgment for failure to exhaust administrative remedies—"crime and sentence printout with classification analysis; disciplinary history printout, Inmate locator history printout; Program history, classification print out (s) dated August 3, 2023; Unusual Incident Report dated 7/28/21"—and it also references records purportedly attached to the certification, but nothing is attached.  Thus, even if Ms. Ripa were a qualified witness, it is not even clear what she is purporting to authenticate.

As a result, the grievance records attached to the motion for summary judgment will not be considered.

III.    **Exhaustion of Administrative Remedies**

Defendants' sole argument as to Plaintiff's excessive force and failure to intervene

claims is that Plaintiff failed to exhaust his administrative remedies.  (Dkt. 29-1 at 4).  But

this argument relies on the authenticity and admissibility of the grievance records

submitted by Defendants.  As noted above, Defendants have failed to meet their burden in

that regard.

Further, even if the Court were to rely solely on Plaintiff's deposition, Plaintiff does

not state that he failed to submit a grievance.  Instead, Plaintiff contends that he "wrote a

grievance and submitted it via the facility mail."  (Dkt. 29-6 at 86).  Plaintiff appears to

further allege in his deposition that the grievance process was unavailable to him because

"some important grievances sometimes magically disappear."  (*Id.* at 87).  Without any

grievance documents as part of the record before the Court, whether Plaintiff failed to

exhaust his administrative remedies cannot be resolved based solely on Plaintiff's

deposition, especially when Plaintiff asserts that he did file a grievance and claims that the

grievance process was unavailable to him.

Defendants argue that there is evidence that "shows that [officers] worked diligently

to investigate [Plaintiff's missing grievance] and gave Plaintiff the opportunity to re-file

his original grievance."  (Dkt. 29-1 at 12).  In an exhibit attached to Plaintiff's complaint,

an officer states in a letter that if Plaintiff still wishes to have the grievance investigated,

he can "submit an original copy of the grievance and it will be investigated."  (Dkt. 1-1 at

16).  The other exhibits attached to Plaintiff's complaint relate to the alleged sexual assault

that occurred on November 8, 2019.  (*See id.* at 1-6).  Without more, and certainly without

the grievance record, it is unclear what complaints from Plaintiff the letter is referring to, and the letter itself fails to prove that Plaintiff did not file a grievance. Instead, the letter states that the officer "never received the grievance in question," which is potentially consistent with Plaintiff's testimony that the grievance process was unavailable to him. (*Id.* at 16). Therefore, Defendants' motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 29) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    May 16, 2025
          Rochester, New York