UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDREW GAYOT,

Plaintiff,

v.

C.O. NICHOLAS SUED, *et al.*,

Defendants.

---

**DECISION AND ORDER**

6:21-CV-06689 EAW

## INTRODUCTION

*Pro se* plaintiff Andrew Gayot ("Plaintiff")[1] commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Five Points Correctional Facility ("Five Points"). (Dkt. 1). Pending before the Court is a renewed motion for summary judgment for failure to exhaust administrative remedies filed by defendants C.O. Nicholas Sued ("Sued"), C.O. Matthew Petrosino ("Petrosino"), C.O. Jonathan Raymond ("Raymond"), and Sgt. Patrick Riley ("Riley") (collectively, "Defendants"). (Dkt. 38).

---

[1] Plaintiff's address of record is the Auburn Correctional Facility (Dkt. 26), but according to the inmate lookup database maintained by the New York State Department of Corrections and Community Supervision, Plaintiff is currently housed at the Elmira Correctional Facility, 1879 Davis Street, P.O. Box 500, Elmira, New York 14901-0500. *See Incarcerated Lookup, NY DOCCS*, https://nysdoccslookup.doccs.ny.gov (last visited Sept. 12, 2026). Thus, it appears that Plaintiff has failed to comply with Local R. Civ. P. 5.2(d). ***Plaintiff is cautioned that the failure to update his address in compliance with this Local Rule may result in dismissal of this action with prejudice***. That said, the Court will excuse Plaintiff's noncompliance in this instance, and directs the Clerk of Court to update Plaintiff's address to the Elmira Correctional Facility at the noted address.

For the following reasons, the Court finds that disputed issues of material fact prevent resolution of this issue based on the papers, and an evidentiary hearing must be conducted pursuant to *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011).

## BACKGROUND

### I. Factual Background

The factual background regarding the nature of Plaintiff's claims is set forth in detail in the Court's May 16, 2025 Decision and Order (Dkt. 33), familiarity with which is assumed for purposes of the instant Decision and Order. In sum, Plaintiff alleges claims for excessive force and failure to intervene regarding an incident at Five Points on July 28, 2021, against Defendants.

The following facts, which pertain to the exhaustion of administrative remedies, are taken from Defendants' Rule 56 Statement of Undisputed Facts (Dkt. 38-4), Plaintiff's Response to Defendants' Statement of Material Facts (Dkt. 44 at 1-6), and the declarations and exhibits submitted by the parties. The Court has noted the relevant factual disputes.

New York State Department of Corrections and Community Supervision ("DOCCS") has a three-step grievance process for incarcerated individuals set forth in 7 N.Y.C.R.R. § 701.1 *et seq*. (Dkt. 38-4 at ¶ 7; Dkt. 44 at ¶ 7). Plaintiff's allegations in this matter are subject to the grievance procedures set forth by DOCCS. (Dkt. 38-4 at ¶ 8; Dkt. 44 at ¶ 8). Plaintiff has been trained on the grievance process and educated on how to file and appeal a grievance at Five Points. (Dkt. 38-4 at ¶ 9; Dkt. 44 at ¶ 9). Plaintiff filed numerous grievances while incarcerated at Five Points. (Dkt. 38-4 at ¶ 10; Dkt. 44 at ¶ 10).

In approximately September of 2021, Mandi Shultz, the Inmate Grievance Program Supervisor at Five Points, was informed by the Superintendent of Five Points that Plaintiff inquired about the status of a grievance he filed. (Dkt. 38-4 at ¶ 11; Dkt. 38-7 at ¶ 14; Dkt. 44 at ¶ 11). Specifically, Schultz "learned that Mr. Gayot claimed he submitted a grievance by asking Corrections Officer ('C.O.') Loewke to post his grievance to the facility by placing it into the mail for him." (Dkt. 38-4 at ¶ 12; Dkt. 44 at ¶ 12). Schultz confirmed with C.O. Loewke that Plaintiff had presented him with an envelope to mail, the contents of which C.O. Loewke was unaware (Dkt. 38-4 at ¶ 13; Dkt. 38-7 at ¶ 16), though Plaintiff contends that he informed C.O. Loewke of its contents (Dkt. 44 at ¶ 13). C.O. Loewke signed a statement confirming his receipt of an envelope from Plaintiff. (Dkt. 1-1 at 13). Schultz states that the grievance office did not receive any correspondence from Plaintiff regarding a July 2021 incident (Dkt. 38-4 at ¶ 14), but Plaintiff contends that this is impossible (Dkt. 44 at ¶ 14).

On September 14, 2021, Schultz contacted Plaintiff by letter and informed him that there were no grievances on file for him. (Dkt. 38-4 at ¶ 15). In the letter, Schultz stated, "I spoke with CO Loewke and he does remember submitting it, however it was not received by the grievance office." (Dkt. 38-9 at 2). Schultz advised Plaintiff that if he wished for the incident to be investigated, he should submit an original copy of the grievance, but Plaintiff contends that there is no obligation for inmates to keep copies of submitted grievances. (Dkt. 38-9 at 2; Dkt. 44 at ¶ 15). Schultz did not hear back from Plaintiff, which Plaintiff explains is because he suspected that Schultz's request was a form of intentional manipulation of the grievance process. (Dkt. 38-4 at ¶ 16; Dkt. 44 at ¶ 16).

There is also no record at the Central Office Review Committee ("CORC") of any appeal by Plaintiff arising from the incident. (Dkt. 38-4 at ¶ 20; Dkt. 44 at ¶ 20).

**II. Procedural Background**

Defendants initially filed a motion for summary judgment on November 6, 2024, arguing that Defendants were entitled to judgment because Plaintiff failed to exhaust his administrative remedies. (Dkt. 29). Plaintiff did not respond to the motion for summary judgment. On May 16, 2025, the Court denied the motion, concluding that Defendants failed to submit evidence in admissible form sufficient to sustain their burden at summary judgment. (Dkt. 33).

At a status conference on October 2, 2025, the Court granted Defendants' oral motion to file a successive motion for summary judgment. (Dkt. 35). On October 23, 2025, Defendants filed the instant renewed motion for summary judgment. (Dkt. 38). On November 10, 2025, Plaintiff filed his opposition to the motion. (Dkt. 44). Defendants did not submit a reply.

## DISCUSSION

**I. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in

favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Exhaustion of Administrative Remedies

Defendants' sole argument in their renewed motion is that Plaintiff failed to exhaust his administrative remedies.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy this requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to [CORC]. In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (citations omitted); *see also Tillman v. Phillips*, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *3 (N.D.N.Y. Nov. 10, 2021) ("Courts in [ ]this Circuit have long recognized [DOCCS' three-step] procedure as an 'available' remedy for purposes of the PLRA.") (quoting *Hall v. Cnty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013)), *adopted*, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021). "[T]he PLRA requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199,

218 (2007). As such, "[t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). "However, a prisoner need not specifically plead or demonstrate exhaustion in the complaint because failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021) (citations and internal quotation marks omitted).

An exception from the exhaustion requirement exists where the grievance process is unavailable. As explained by the Court of Appeals for the Second Circuit:

> First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 643-44).

The Court has carefully reviewed the parties' submissions in this case and concludes that the issue of whether Plaintiff exhausted his administrative remedies and/or whether

the exception to that requirement is applicable cannot be resolved on the papers. Viewing the facts in the light most favorable to Plaintiff, Plaintiff has raised genuine factual questions as to the processing of the grievance that he contends was provided to C.O. Loewke. That C.O. Loewke confirmed that Plaintiff supplied an envelope to him on or about the time in question serves to corroborate Plaintiff's version of events, as does Plaintiff's follow-up inquiry regarding the status of his grievance. Thus, Plaintiff's allegations go beyond a wholly speculative or conclusory claim. *Nimmons v. Warden*, No. 21-CV-05169 (LDH), 2025 WL 2782486, at *4 (E.D.N.Y. Sept. 30, 2025) ("[A] conclusory claim that a grievance was lost or ignored is insufficient to overcome exhaustion requirements."). The fact that Defendants have no record of the grievance does not definitively resolve the question. *See Fann v. Graham*, No. 915CV1339 (DNH)(CFH), 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies. . . ."), *report and recommendation adopted*, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018); *Thaxton v. Simmons*, No. 10-CV-1318, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact."). Moreover, whether an exception to exhaustion applies necessarily depends, at least in part, on resolution of the factual issues concerning

Plaintiff's alleged attempt to deliver his grievance to C.O. Loewke, and it further depends on resolution of factual issues concerning Schultz's communications to Plaintiff (including the apparent requirement that he provide a copy of the original grievance).

Accordingly, at this juncture, the Court is unable to conclude as a matter of law that the grievance process was available to Plaintiff. Thus, pursuant to *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011), an evidentiary hearing must be held. *Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) ("Accordingly, [Defendant] has failed to demonstrate the absence of a material factual dispute as to whether the grievance process was 'unavailable' due to the machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions. . . . In order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present."). The matter is referred to United States Magistrate Judge Colleen D. Holland pursuant to 28 U.S.C. § 636(b)(1)(B) for purposes of conducting the exhaustion hearing and issuing a report and recommendation concerning the same.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 38) is denied without prejudice. The Court concludes that disputed issues of fact prevent resolution on the papers of the issue concerning Plaintiff's exhaustion of remedies under the PLRA. Therefore, the Court refers the issue to Magistrate Judge Holland to conduct a hearing and issue a report and recommendation concerning the same, pursuant to 28 U.S.C. § 636(b)(1)(B).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 14, 2026
Rochester, New York